UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ANA B. DUARTE and JESSICA ROSA,
individually and on behalf of all
other persons similarly situated
who were employed by TRI-STATE PHYSICAL
MEDICINE & REHABILITATION, P.C.,
ELECTRODIAGNOSTIC AND PHYSICAL MEDICINE,
P.C., and ORSUVILLE G. CABOTU and ERIC       **MEMORANDUM AND ORDER**
JACOBSON in both their official and
individual capacities, and/or any other       11 Civ. 3765(NRB)
entities affiliated with or controlled by
TRI-STATE PHYSICAL MEDICINE &
REHABILITATION, P.C., ELECTRODIAGNOSTIC
AND PHYSICAL MEDICINE, P.C., and
ORSUVILLE G. CABOTU and ERIC JACOBSON in
both their official and individual
capacities,

                         Plaintiffs,

            - against -


TRI-STATE PHYSICAL MEDICINE &
REHABILITATION, P.C., ELECTRODIAGNOSTIC
AND PHYSICAL MEDICINE, P.C., and
ORSUVILLE G. CABOTU and ERIC JACOBSON in
both their official and individual
capacities,

                         Defendants.
----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiffs Ana B. Duarte and Jessica Rosa (collectively,

"plaintiffs") bring this action against Tri-State Physical

Medicine & Rehabilitation, P.C. ("Tri-State"), ElectroDiagnostic

and Physical Medicine, P.C. ("ElectroDiagnostic"), Eric

Jacobson, and Orsuville G. Cabotu (collectively, "defendants"),

alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended (the "FLSA"), and the New York Labor Law (the "NYLL"). Specifically, plaintiffs allege that defendants failed to pay overtime compensation and "spread of hours" wages as required under the FLSA and/or NYLL. Duarte also alleges that defendants unlawfully retaliated against her for having engaged in protected activity under the statutes.

Two motions by defendants are presently before the Court. In their first motion, defendants move for judgment on the pleadings with regard to Duarte's retaliation claims as well as all of plaintiffs' claims against Jacobson and Cabotu. In their second motion, defendants move for summary judgment, requesting that the Court dismiss plaintiffs' claims to the extent that those claims are asserted as a collective or class action on behalf of similarly situated individuals.

For the reasons stated below, defendants' motion for judgment on the pleadings is granted in part and denied in part, and defendants' motion for summary judgment is denied in its entirety.

## BACKGROUND[1]

Tri-State is an outpatient healthcare business located in the Bronx, New York. (Defs.' Summ. J. Mem., Ex. 3.) Jacobson is the owner and sole director of Tri-State. (Id., Exs. 1, 3.) Although Tri-State was incorporated in 1997, Jacobson suspended the company's operations in 2001 and only resumed the business in March 2009. (Id., Ex. 3.) Since the latter date, Tri-State has employed twenty-seven individuals in administrative positions similar to those held by plaintiffs.[2] (Id., Ex. 7.)

ElectroDiagnostic is also an outpatient healthcare business and shares its business space with Tri-State. (Id., Ex. 4.) Cabotu is the owner and sole director of ElectroDiagnostic. (Id., Ex. 2.) The company became operational in 2008 and since that time has employed twenty individuals in administrative positions. (Id., Exs. 4, 7.)

---

[1] The background is derived from the first amended complaint ("FAC"), filed October 13, 2011, the Declaration of Ana B. Duarte ("Duarte Decl."), filed December 16, 2011, and the exhibits annexed thereto, Defendants' Memorandum of Law in Support of Their Partial Motion to Dismiss (Defs.' Mot. to Dismiss Mem."), and the exhibits annexed thereto, and Defendants' Memorandum of Law in Support of Their Partial Motion for Summary Judgment ("Defs.' Summ. J. Mem."), and the exhibits annexed thereto. While normally we would derive the operative facts for a motion for summary judgment from a Rule 56.1 statement, as discussed further infra, defendants have failed to file such a statement in violation of Local Civil Rule 56.1(a).

[2] Three of these individuals are listed by defendants as having worked in a "Temp" position for Tri-State. (Defs.' Summ. J. Mem., Ex. 7.) Although defendants do not include these workers in their count of the number of individuals potentially similarly situated to plaintiffs, defendants are inconsistent in that they do include in their tally an individual who worked for ElectroDiagnostic in an identical Temp position. Without any further information provided as to the nature of the Temp employees, we include the three individuals who worked for Tri-State in this position in our analysis of the putative class.

While Tri-State and ElectroDiagnostic have employed twenty-seven and twenty individuals in administrative positions, respectively, fourteen of these employees have worked for both companies, albeit at different points in time. (Id.) Thus, there are only thirty-three specific individuals who have worked in administrative positions for Tri-State and/or ElectroDiagnostic during the periods relevant to this suit. (Id.)

Rosa was employed by ElectroDiagnostic as an administrative and medical assistant from December 2009 until October 2010. (FAC ¶ 39.) Rosa alleges that during her tenure with ElectroDiagnostic, she typically worked six days each work for an average of forty-nine to fifty-one hours per week. (Id.) Rosa claims that she was paid the same hourly wage for every hour she worked. (Id.)

Duarte was employed by Tri-State as an administrative assistant from October 2009 until February 2011. (Id. ¶ 38.) Immediately prior to her employment with Tri-State, Duarte had worked for ElectroDiagnostic for two weeks in a similar capacity. (Defs.' Summ. J. Mem., Ex. 4.) Duarte alleges that during her employment with Tri-State, she typically worked five days each week for an average of forty-five to fifty-five hours per week and that, like Rosa, she was paid the same hourly wage for every hour she worked. (FAC ¶ 38.) Duarte further alleges that she was discharged by Tri-State because she had begun to

4

inquire of fellow employees whether they were being paid proper overtime compensation. (Id. ¶¶ 89, 100; Duarte Decl. ¶¶ 21-22.)

<u>**DISCUSSION**</u>

I.   <u>**Motion for Judgment on the Pleadings**</u>

Defendants' first motion pertains to Duarte's federal and state retaliation claims as well as plaintiffs' claims against individual defendants Jacobson and Cabotu. Although defendants style this motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), such a motion is procedurally barred because defendants filed their answer to the amended complaint prior to filing the motion. <u>See</u> Fed. R. Civ. P. 12(b) (requiring that a Rule 12(b) motion be brought before the responsive pleading is filed). Under these circumstances, we are to construe the motion as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). <u>See</u> <u>Patel v. Contemporary Classics of Beverly Hills</u>, 259 F.3d 123, 126 (2d Cir. 2001).

A. <u>**Legal Standards**</u>

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." <u>Id.</u> The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Id.</u> Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and footnote omitted). Ultimately, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (internal quotation marks omitted).

**B. Retaliation Claims**

### 1. FLSA Retaliation Claims

The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted . . . any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). Although (somehow) not briefed by the parties, the question of what forms of conduct qualify as protected activity under this provision is central to the resolution of defendants' motion.

In Lambert v. Genesee Hospital, 10 F.3d 46, 55 (2d Cir. 1993), the Second Circuit interpreted the FLSA's anti-retaliation provision to be limited in its reach, holding that

it proscribed only retaliation that occurs after an employee has complained of a potential violation to a government authority. The Lambert court specifically noted that the FLSA does not extend protection to internal complaints lodged with one's employer. See id. ("The plain language of this provision . . . does not encompass complaints made to a supervisor."); see also Nicolaou v. Horizon Media, Inc., 402 F.3d 325, 328 (2d Cir. 2005) ("In [Lambert], this Court held that Section 15(a)(3) of [the] FLSA does not apply to retaliation taken in response to internal complaints . . . .").

The Supreme Court recently addressed the scope of the anti-retaliation provision in Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1336 (2011). The Court held that protected activity under the FLSA is not limited to formal written complaints but may also include oral communications. See id. However, the Court expressly refrained from deciding whether intracompany complaints may constitute protected activity under the statute, or whether, as held in Lambert, such complaints are outside of the statute's reach. See id. (stating "no view on the merits" of the issue); see also Minor v. Bostwick Labs., Inc., 669 F.3d 428, 433 n.5 (4th Cir. 2012) (finding that Kasten did not resolve this debate). Given this express reservation, the holding of Lambert vis-à-vis intracompany complaints remains binding precedent on this Court. See Hyunmi Son v. Reina Bijoux,

Inc., 823 F. Supp. 2d 238, 243-44 (S.D.N.Y. 2011) (holding same); Ryder v. Platon, No. 11 Civ. 4292 (JFB)(ARL), 2012 WL 2317772, at *7-8 (E.D.N.Y. June 19, 2012) (holding same).

Here, Duarte alleges that defendants retaliated against her "because she began inquiring about not being paid her overtime hours." (FAC ¶ 89.) It is dispositive that Duarte provides no indication that she ever complained of the alleged improper practices to a government authority prior to her termination.[3] Accordingly, defendants are entitled to judgment on the pleadings with respect to Duarte's FLSA retaliation claims.

### 2. NYLL Retaliation Claims

NYLL § 215(1)(a) provides that it is unlawful for an employer to, inter alia, "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person."

Unlike its federal analogue, the NYLL's anti-retaliation provision unquestionably protects informal complaints made to an employer. See Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d

---

[3] Duarte details her alleged inquiries in her declaration, stating that "[a] few weeks before [she] was fired, [she] started asking the other office employees if they were getting paid correctly for their overtime hours." (Duarte Decl. ¶ 21.) While this statement falls outside of the pleadings and thus we do not rely on it in reaching our holding, the statement makes clear that Duarte's alleged protected conduct entailed only intracompany complaints.

240, 263 (S.D.N.Y. 2008); Barturen v. Wild Edibles, Inc., No. 07
Civ. 8127 (LLS), 2007 WL 4468656, at *5 (S.D.N.Y. Dec. 18,
2007). Duarte's allegation that she was discharged as a result
of her inquiries into the failure to pay overtime is therefore
sufficient to defeat defendants' motion with respect to her
state retaliation claims.

   C. **Claims Against Jacobson and Cabotu**

   Under the FLSA, an "employer" is defined to include "any
person acting directly or indirectly in the interest of an
employer in relation to an employee."[4] 29 U.S.C. § 203(d). Thus,
individuals may be held liable for principal violations of the
FLSA.

   The Second Circuit has identified at least four factors
relevant to the determination of whether an individual qualifies
as an employer for FLSA purposes: (1) whether the individual had
the power to hire and fire employees; (2) whether the individual
supervised and controlled employee work schedules or conditions
of employment; (3) whether the individual determined the rate
and method of payment; and (4) whether the individual maintained
employment records. Herman v. RSR Sec. Servs. Ltd., 172 F.3d

---

[4] Because the FLSA and NYLL provide for similar definitions of an "employer,"
courts in this Circuit treat the two statutes as coextensive for purposes of
this inquiry. See Paz v. Piedra, No. 09 Civ. 03977 (LAK)(GWG), 2012 WL
121103, at *5 (S.D.N.Y. Jan. 12, 2012). Our analysis of Jacobson's and
Cabotu's status under the FLSA therefore applies equally to their status
under the NYLL. See id.; Fujun Jiao v. Shi Ya Chen, No. 03 Civ. 0165 (DF),
2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007).

132, 139 (2d Cir. 1999). None of these factors is alone dispositive, and, in reaching a determination, "the overarching concern is whether the alleged employer possessed the power to control the workers in question." Id.; see also Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192-93 (S.D.N.Y. 2003).

Plaintiffs allege that Jacobson and Cabotu, as the principals of Tri-State and ElectroDiagnostic, respectively, satisfy each of the four factors described above. (FAC ¶¶ 40, 43.) Curiously, rather than dispute this notion, defendants seem to confirm that such is the case. Defendants unabashedly state that Jacobson and Cabotu are "responsible for hiring and firing . . . employees" at their respective companies and "oversee[] employee operations and control." (Defs.' Summ. J. Mem. at 4-6.) Defendants even note that Jacobson and Cabuto sign their employees' paychecks (id.), a fact that has been considered probative of an individual's status as an employer. See Herman, 172 F.3d at 140. In light of these concessions, one is left to ponder the judgment of defendants' counsel in filing the instant motion. In any event, we find it more than plausible that plaintiffs will be able to establish that Jacobson and Cabuto qualify as employers for purposes of their claims.[5]

---

[5] Because Duarte was employed by Tri-State (and potentially Jacobson therein) and Rosa by ElectroDiagnostic (and potentially Cabuto therein), there is no need to address at this juncture whether Tri-State and ElectroDiagnostic

## II.  <u>Motion for Summary Judgment</u>[6]

Although, for reasons that will be made apparent below, the precise nature of defendants' motion for summary judgment is unclear, it appears that defendants move for summary judgment on the first four counts of the amended complaint to the extent that those counts assert claims on behalf of similarly situated individuals. (Defs.' Summ. J. Mem. at 2.) Plaintiffs' first cause of action is brought as a potential collective action under the FLSA, while plaintiffs' second, third, and fourth causes of action are brought on behalf of a putative class of employees for alleged violations of the NYLL.

### A. <u>Legal Standards</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Scott v. Harris</u>,

_____

could constitute joint employers – at least for purposes of defendants' motion for judgment on the pleadings. We do address this issue <u>infra</u> in the context of defendants' motion for summary judgment.

[6] Defense counsel inexplicably failed to file a statement of material facts in conjunction with their motion for summary judgment, in violation of Local Civil Rule 56.1(a). While the Court could deny defendants' motion on this ground alone, <u>see</u> <u>N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.</u>, 426 F.3d 640, 648-49 (2d Cir. 2005), we will exercise our discretion and conduct our own review of the record. <u>See</u> <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 73 (2d Cir. 2001).

550 U.S. 372, 380 (2007) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)); <u>see also</u> <u>Quarles v. Gen. Motors Corp.</u>, 758 F.2d 839, 840 (2d Cir. 1985).

In this context, "[a] fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). In determining whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. <u>See Fincher v. Depository Trust & Clearing Corp.</u>, 604 F.3d 712, 720 (2d Cir. 2010).

## B. **FLSA Collective Action**

The parties' briefing on this motion focuses exclusively on the question of whether plaintiffs can satisfy the elements of a class action under Rule 23 of the Federal Rules of Civil Procedure. In structuring their briefs in this manner, the parties fail to recognize the fundamental distinction between a collective action under the FLSA and a class action as authorized by Rule 23.

Section 216(b) of the FLSA provides that an action "may be maintained against any employer . . . in any Federal or State

court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. The FLSA thus requires that potentially "similarly situated" plaintiffs affirmatively "opt in" if they wish to join an FLSA collective action. Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 244 (2d Cir. 2011). This requirement stands in notable contrast to the "opt out" nature of a class action brought under Rule 23. See id.

Courts in this Circuit typically adhere to a two-stage framework in determining whether an FLSA claim may proceed as a collective action. See Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010). In the first stage, the named plaintiff requests that the court authorize notice to be sent to potential opt-in plaintiffs.[7] Id. at 555. A plaintiff's burden at this stage is simply to make a "modest factual showing" that he and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. Id. (internal quotation

---

[7] Plaintiffs in this action have yet to request this type of court-authorized notice. Although a request for court-authorized notice is typical in collective-action suits, such notice is merely a "case management tool" and plaintiffs may opt in to the action even in its absence. See Myers, 624 F.3d at 555 n.10 (internal quotation marks omitted).

marks omitted). If other plaintiffs do indeed join the suit, the court will later conduct a second inquiry, "on a fuller record," and determine "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Id. The action will be "de-certified" if the court determines that this requirement is not met. Id.

The showing required to proceed as an FLSA collective action is therefore quite different – and far more lenient – than that required for certification of a class action under Rule 23. Cunningham v. Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 643 (S.D.N.Y. 2010). Unlike with Rule 23 class actions, "no showing of numerosity, typicality, commonality and representativeness need be made" in the FLSA context. Id. (internal quotation marks omitted); accord Klimchack v. Cardrona, Inc., No. 09 Civ. 04311 (SJF)(ARL), 2011 WL 1120463, at *4 n.3 (E.D.N.Y. Mar. 24, 2011). The parties' briefing on the requirements of Rule 23 is consequently inapposite as applied to plaintiffs' FLSA claim.

The Court is thus left to discern for itself how to apply defendants' motion for summary judgment to plaintiffs' FLSA claim. Fortunately, this question becomes straightforward once the basic nature of an FLSA collective action is considered. A plaintiff in an FLSA action does not "represent any other employees until they affirmatively opt in to the collective

14

action." <u>Sandoz v. Cingular Wireless LLC</u>, 553 F.3d 913, 919 (5th Cir. 2008). In order words, an FLSA plaintiff's "right to represent a class depends entirely on whether other plaintiffs have opted in." <u>Smith v. T-Mobile USA Inc.</u>, 570 F.3d 1119, 1123 (9th Cir. 2009).

Because no other employees have, to this point, opted in to this action, there is no collective action to yet evaluate or dismiss. Only once other employees join the suit would we be able to consider whether those opt-in plaintiffs are indeed similarly situated to Duarte and Rosa and whether the FLSA claim may accordingly proceed as a collective action.[8] Defendants' motion for summary judgment is therefore denied with respect to plaintiffs' first cause of action.

### C. <u>NYLL Class Actions</u>

Unlike the FLSA, the NYLL does provide a vehicle for plaintiffs to pursue class action claims under Rule 23. <u>See Shahriar</u>, 659 F.3d at 244. Defendants, however, contend that they are entitled to summary judgment on plaintiffs' NYLL claims because "there is no basis upon which a class can be certified in this action." (Defs.' Summ. J. Mem. at 2.) Specifically, defendants suggest that plaintiffs cannot meet the numerosity

---

[8] As previously described, a separate question, not currently before the Court, would be whether the court should authorize notice of the action to be sent to potential opt-in plaintiffs.

and adequacy requirements of Rule 23(a) and the predominance requirement of Rule 23(b)(3).

### 1. **Stage of the Litigation**

Although ostensibly a motion for summary judgment, defendants' motion is perhaps more properly conceived as a motion to strike plaintiffs' class allegations. There has yet to be any discovery conducted in the action – defendants have simply supplemented the pleadings with supportive affidavits and selected evidence under their control.

District courts are loath "to preemptively terminate the class aspects of litigation . . . before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." See Mazzola v. Roomster Corp., No. 10 Civ. 8996 (JGK), 2012 WL 1019124, at *11 (S.D.N.Y. Mar. 26, 2012) (internal quotation marks omitted). Courts are inclined instead to reserve judgment on issues pertinent to certification "until information necessary to reach an informed decision is available." Ruggles v. WellPoint, Inc., 253 F.R.D. 61, 66-67 (N.D.N.Y. 2008); see also Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 324 (S.D.N.Y. 2010).

Given the preference to review certification questions upon a more complete record, as well as the "liberal rather than restrictive construction" of Rule 23 that has been emphasized by

the Second Circuit, <u>Gortat v. Capala Bros., Inc.</u>, No. 07 Civ. 3629 (ILG)(SMG), 2009 WL 3347091, at *3 (E.D.N.Y. Oct. 16, 2009) (internal quotation marks omitted), defendants maintain a heavy burden in seeking judgment on plaintiffs' class action claims at this stage of the proceedings. Only if it is beyond dispute that plaintiffs will be unable to establish the elements necessary for certification will defendants' request be granted.

### 2. **Joint Employers**

As an initial matter, the parties contest whether Tri-State and ElectroDiagnostic could potentially be held liable as joint employers of the members of the putative class.

It is well-established that a worker may be employed by more than one entity for purposes of the FLSA or NYLL. <u>See</u> <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 66 (2d Cir. 2003). To determine whether an entity that does not formally employ an individual may nonetheless be held liable as a joint employer, courts in this Circuit examine the "economic realities" of the employment relationship.[9] <u>See</u> <u>Barfield v. N.Y.C. Health & Hosps. Corp.</u>, 537 F.3d 132, 141 (2d Cir. 2008).

---

[9] While the economic realities test expounded by the Second Circuit in <u>Zheng</u> was in the context of an FLSA claim, "courts in this [C]ircuit hold that the [NYLL] embodies the same standards for joint employment as the FLSA." <u>Paz</u>, 2012 WL 121103, at *5 (internal quotation marks omitted); <u>see also</u> <u>Beltre v. Lititz Healthcare Staffing Solutions, LLC</u>, 757 F. Supp. 2d 373, 377 n.2 (S.D.N.Y. 2010). As previously described, this coextensive treatment derives from the nearly identical definitions contained in the statutes with respect to an entity's employer status. <u>Compare</u> 29 U.S.C. § 203(g) (defining "[e]mploy" as "to suffer or permit to work"), <u>with</u> NYLL § 2(7) (defining "[e]mployed" as "permitted or suffered to work").

Under this test, courts first examine the degree of formal control exercised by the putative joint employer over the employee. Wolman v. Catholic Health Sys. of Long Island, Inc., No. 10 Civ. 1326 (JS)(ETB), 2012 WL 566255, at *4 (E.D.N.Y. Feb. 16, 2012). The same four factors previously described as relevant to the liability of individuals are considered in conducting this formal control inquiry.[10] See id.

Even if formal control is found to be lacking, courts are to consider whether the putative joint employer "nevertheless exercised functional control over [the] worker." Id. (quoting Barfield, 537 F.3d at 143). Factors relevant to this evaluation include: (1) whether the putative joint employer's premises and equipment were used for the plaintiffs' work; (2) whether the plaintiffs shifted from one putative joint employer to another; (3) the extent to which plaintiffs performed discrete functions that were integral to the putative joint employer's operations; (4) whether plaintiffs' relationship vis-à-vis the putative joint employer did not depend on the identity of their nominal employer; (5) the degree to which the putative joint employer or its agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the putative

---

[10] These factors are whether the entity "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Wolman, 2012 WL 566255, at *4 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).

joint employer. See Zheng, 355 F.3d at 72. The analysis of these factors is holistic, and "the court is also free to consider any other factors it deems relevant to its assessment of the economic realities." Id. at 71-72. Thus, the economic realities test is a "flexible concept" that varies "based on the factual challenges posed by particular cases." Barfield, 537 F.3d at 141-42.

We need not engage in an exhaustive analysis of each of the factors described above given the preliminary stage at which this motion is made and the evidence already in the record supporting a possible finding of joint employment. Tri-State and ElectroDiagnostic are engaged in the same line of business and share an office space. See Zheng, 355 F.3d at 71. Moreover, a significant percentage of the individuals who have worked as administrative employees for at least one of the companies have worked for both of the companies (fourteen of thirty-three), a statistic rather striking for two companies operating as independent entities.

Beyond this circumstantial evidence, Duarte alleges that she and other administrative employees regularly performed duties for both Jacobson and Cabuto. (Duarte Decl. ¶¶ 4, 5, 13.) Duarte details specific functions such as sending invoices, scheduling appointments, and translating for patients that administrative employees performed for both doctors. (Id.)

Bolstering this allegation is a memorandum that Duarte claims to have been forwarded by former co-workers in March 2011. (<u>Id.</u> ¶ 27; Ex. 2.) The memorandum is purportedly written on behalf of "dedicated employees" of Tri-State and ElectroDiagnostic and is jointly addressed to Fouad Matragi and Mohamed Momani, the latter individual being the general manager of Tri-State.[11] (<u>Id.</u>, Ex. 2; Defs.' Mot. to Dismiss Mem., Ex. 6.) The document makes a litany of requests, including that any employee working over forty hours in a week receive overtime compensation. (Duarte Decl., Ex. 2.) The substance of the memorandum aside, if it was in fact written by administrative employees of both Tri-State and ElectroDiagnostic, this would suggest that the employees view themselves as being identically situated and view Matragi and Momani as each maintaining control over the terms and conditions of their employment.

Given this evidence, as well as the "fact-intensive character of the joint employment inquiry," <u>Zheng</u>, 355 F.3d at 76 n.13, we find that genuine issues of material fact remain with regard to the joint employer question. Discovery is needed to gain a better understanding of the "functional employment relationship" between Tri-State and ElectroDiagnostic and the members of the putative class. <u>See</u> <u>Hui Lin v. Great Rose</u>

---

[11] The precise role of Matragi is unclear from the present record, but it appears that he holds a managerial position with Tri-State or ElectroDiagnostic. (Duarte Decl. ¶ 10.)

<u>Fashion, Inc.</u>, No. 08 Civ. 4778 (NGG)(RLM), 2009 WL 1544749, at *15 (E.D.N.Y. June 3, 2009).

### 3. **Numerosity**

Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants contend that there is no possibility that plaintiffs could satisfy this numerosity requirement.

Because we are unable to preclude the possibility that Tri-State and ElectroDiagnostic operate as joint employers, we will consider the total number of employees who have worked in administrative positions for both companies in analyzing whether the numerosity requirement could be met. There are therefore thirty-three members of the putative class.[12]

In the Second Circuit, a class is presumed sufficiently numerous if it contains forty or more members but will be

---

[12] Defendants suggest that from this figure we should subtract seventeen employees who have submitted affidavits indicating that they do not wish to participate in this suit. These affidavits were attached to defendants' reply brief and state in nearly identical language that the given employee has "no interest in joining this lawsuit's class action or collective action." (Defs.' Reply Mem. of Law in Supp. of Their Partial Mot. for Summ. J., Ex. 1.) Notably, sixteen of the seventeen individuals submitting affidavits are current employees of defendants.

We attach no import to these affidavits in analyzing the possibility of certification. One of the very purposes of the opt-out nature of a class action, particularly in the wage claim context, is to protect individuals who fear retaliation or are otherwise reluctant to assert their rights. See <u>Shahriar</u>, 659 F.3d at 244. We thus concur with the sentiment expressed in <u>Gortat</u>, 2009 WL 3347091, at *4, that "considering these affidavits when determining numerosity would legitimize conduct that Rule 23 deems inappropriate. It would also provide an incentive for defendants in this case, and in other cases, to engage in improper and potentially coercive communications with members of a putative class."

presumed insufficient if it contains twenty-one or fewer individuals. Novella v. Westchester Cnty., 443 F. Supp. 2d 540, 546 (S.D.N.Y. 2006). In circumstances when the size of the proposed class falls between these two figures – as it does here - courts consider the following factors in deciding whether joinder is impracticable: (1) the judicial economy that would arise by avoiding multiple actions; (2) the geographic dispersion of the members of the proposed class; (3) the financial resources of the proposed class members; (4) the ability of the class members to file individual suits; and (5) whether the class requests prospective relief that could affect future class members. Id. (citing Ansari v. N.Y. Univ., 179 F.R.D. 112, 114-15 (S.D.N.Y. 1998)).

Like the joint employer analysis, the weighing of these considerations is a fact-intensive inquiry that is difficult to resolve at this stage of the litigation. It therefore suffices for present purposes that there are at least several factors suggesting that numerosity could be established, most notably that over half of the proposed class members are still employed by defendants in relatively low-paying positions. See Shahriar, 659 F.3d at 244 (noting that "where some class members are still employed by the defendant, 'concern regarding employer retaliation or reprisal renders individual joinder less practicable'" (citing Sanft v. Winnebago Indus., Inc., 214

F.R.D. 514, 524 (N.D. Iowa 2003))); see also Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 363 (E.D.N.Y. 2009).

In light of the posture of the proceedings, along with the number and nature of the employees at issue, we are unable to conclude as a matter of law that the proposed class will fail to meet the numerosity requirement of Rule 23.

### 4. **Adequacy**

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). In evaluating whether a proposed class representative satisfies this requirement, we consider: (1) whether the representative's interests are antagonistic to those of other members of the class and (2) whether the representative's attorneys are qualified, experienced, and competent to lead the litigation. Loftin v. Bande (In re Flag Telecom Holdings, Ltd. Sec. Litig.), 574 F.3d 29, 35 (2d Cir. 2009).

Defendants contend that Duarte could not serve as an adequate class representative because "[her] claims involving retaliation . . . present a conflict in her ability to vindicate the rights of any alleged class members." (Defs.' Summ. J. Mem. at 21.) Defendants cite to no authority for this proposition. Cf. Garcia v. Pancho Villa's of Huntington Vill., Inc., No. 09 Civ. 486 (ETB), 2011 WL 6287932, at *6 (E.D.N.Y. Dec. 15, 2011)

(rejecting argument that plaintiffs could not serve as class representatives because they had been terminated for cause). Further, defendants point to no evidence indicating that Duarte's interests are antagonistic to those of the putative class members – who possess the same claims as Duarte concerning overtime and spread of hours pay. Defendants have therefore failed to demonstrate that plaintiffs will be unable to meet the adequacy requirement.

### 5. **Predominance**

To be certified as a class action under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement of this provision is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Myers, 624 F.3d at 547.

Defendants suggest that plaintiffs' claims do not meet these criteria because no employees other than Duarte and Rosa have come forward to assert a complaint against defendants, and,

as previously described, some employees have filed affidavits indicating that they do not wish to participate in this action. This argument, if accepted, would require us to reconsider the very nature of an opt-out class action under Rule 23. We decline this invitation.

A more comprehensive record is needed to assess whether issues common to the class do indeed predominate over those specific to individual members. We note, however, that defendants would be well-served to direct their arguments to issues unique to this action rather than issues inherent to NYLL claims, as courts have routinely found the requirements of Rule 23(b)(3) satisfied in the context of such claims. See, e.g., Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 345-46 (S.D.N.Y. 2004), Garcia, 2011 WL 6287932, at *6-7, Gortat, 2009 WL 3347091, at *7-8.

## CONCLUSION

For the reasons stated above, defendants' motion for judgment on the pleadings is granted with respect to Duarte's FLSA retaliation claims but is denied with respect to Duarte's NYLL retaliation claims and all claims against Jacobson and Cabotu. Defendants' motion for summary judgment is denied in its entirety.

**SO ORDERED.**

Dated:    New York, New York
          July 10, 2012

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE


Copies of the foregoing Memorandum and Order have been mailed on
this date to the following:

**Attorney for Plaintiffs:**
Lloyd Ambinder, Esq.
Virginia & Ambinder, LLP
111 Broadway, Suite 1403
New York, NY 10006

**Attorney for Defendants:**
Omar T. Mohammedi, Esq.
Woolworth Building
233 Broadway, Suite 801
New York, NY 10279